Slip Op. 19–162

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES, | : |
| Plaintiff, | : |
| v. | : |
| AEGIS SECURITY INSURANCE COMPANY, | : |
| Defendant, | : |
| and | : |
| TRICOTS LIESSE 1983, INC., | : |
| Third-Party Defendant. | : |

Before: Richard K. Eaton, Judge

Consol. Court No. 11-00388

## <u>OPINION and ORDER</u>

[Granting summary judgment for Plaintiff and denying summary judgment for Defendant and Third-Party Defendant.]

Dated:  December 17, 2019

*Stephen C. Tosini*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Plaintiff. With him on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, of Washington, DC. Of counsel on the brief was *Matthew C. Landreth*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Buffalo, NY.

*T. Randolph Ferguson*, Sandler, Travis & Rosenburg, PA, of San Francisco, CA, argued for Defendant.

*John B. Brew*, Crowell & Moring LLP, of Washington, DC, argued for Third-Party Defendant. With him on the brief was *Frances P. Hadfield*.

Eaton, Judge: This matter is before the court on cross-motions for summary judgment filed by Plaintiff the United States ("Plaintiff" or the "Government"), and by Defendant Aegis Security Insurance Company ("Aegis"), a surety company, and Third-Party Defendant Tricots Liesse 1983, Inc. ("Tricots"), an importer of knitted fabric from Canada (collectively, "Defendants").

The Government contends that there is no genuine issue of material fact that would preclude judgment in its favor for unpaid duties and fees, pursuant to 19 U.S.C. § 1592(d) (2012),[1] because Tricots, in violation of § 1592(a),[2] negligently misrepresented to U.S. Customs and Border Protection ("Customs") that 875 entries of knitted fabric from Canada qualified for the preferential tariff treatment afforded to "originating" goods under the North American Free Trade Agreement ("NAFTA") Rules of Origin.[3] *See* Pl.'s Mem. Supp. Cross-Mot. Partial Summ.

---

[1]     Unless otherwise noted, further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2012 edition. For ease of reference, citations to Customs' regulations are to the 2019 edition. The pertinent parts of both statutes and regulations are identical in substance to the editions in effect at the time of importation.

[2]     Subsection 1592(a) prohibits any person from, among other things, entering merchandise into the United States by negligently providing materially false information to U.S. Customs and Border Protection ("Customs"). *See* 19 U.S.C. § 1592(a). If a person violates § 1592(a), and as a result the United States is deprived of duties, taxes, or fees, § 1592(d) requires Customs to "restore" them, even if the entries of merchandise have been finally liquidated. That is, the finality of liquidation, which attaches by operation of 19 U.S.C. § 1514, does not bar the Government's collection of duties, taxes, and fees according to § 1592(d), which provides that "*[n]otwithstanding section 1514 . . .*, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)], [Customs] shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." *Id.* § 1592(d) (emphasis added).

[3]     NAFTA rules for determining when a good "originates in the territory of a NAFTA country" are codified as part of U.S. law at 19 U.S.C. § 3332(a)(1) and in Customs' regulations at 19 C.F.R. pt. 181 app., pt. II, § 4. Among the criteria for a good to be originating is that "the good is produced entirely in the territory of one or more of the NAFTA countries

(footnote continued . . .)

J., ECF No. 89 ("Pl.'s Br."); Pl.'s Reply Supp. Mot. Partial Summ. J. & Opp'n Defs.' Mot.

Summ. J., ECF No. 112; *see also* Pl.'s R. 56.3 Stmt. Undisputed Facts, ECF No. 89-1 ("Pl.'s R.

56.3 Stmt."); Pl.'s Resp. Defs.' R. 56.3 Stmt., ECF No. 112-1 ("Pl.'s Resp. Defs.' R. 56.3

Stmt."). As a result, no duties or administrative fees, known as "merchandise processing fees,"

were paid on the entries. That is, all 875 of the entries were finally liquidated free of duties and

fees.

After liquidation of the subject entries became final, Tricots sought to make a "prior

disclosure" under 19 U.S.C. § 1592(c),[4] to correct its claim that its goods were entitled to duty-

free entry because they were NAFTA-originating, and to claim instead that they were entitled to

duty-free entry under a quota program for textiles called the Tariff Preference Levels Program.

Customs rejected the prior disclosure because Tricots failed to submit the Certificates of

Eligibility,[5] required to establish eligibility under the quota program, before liquidation became

final, and failed to tender the duties owed. Plaintiff now seeks to recover the unpaid duties and

fees from Tricots, as importer of record, and from Aegis as surety.

---

exclusively from originating materials," which is the rule cited by Tricots in its entry paperwork
for the subject entries. *See* 19 U.S.C. § 3332(a)(1)(C); Defs.' Mot. Dismiss, ECF No. 76-1, Ex. A
(Certificates of Origin).

[4]     If a party discovers it has claimed incorrectly that its entries qualified for
preferential tariff treatment as originating goods under the NAFTA Rules of Origin, the party
shall not be liable for penalties if it makes a "prior disclosure" of the error, *i.e.*, if it self-reports
the error in writing to Customs. 19 U.S.C. § 1592(c)(5); *see also* 19 C.F.R. § 181.82(a).

[5]     Pursuant to Customs' regulations, "[i]n connection with a claim for NAFTA
preferential tariff treatment involving non-originating textile or apparel products subject to the
tariff preference level provisions of [the relevant NAFTA appendix], the importer must submit to
[Customs] a Certificate of Eligibility . . . covering the products." 19 C.F.R. § 102.25. Certificates
of Eligibility are issued by authorized government officials—here, the Canadian Department of
Foreign Affairs and International Trade.

By their cross-motion, Defendants argue that the Government's unpaid duties claims must be dismissed for the same reason the court dismissed its penalty claim in *United States v. Aegis Security Insurance Company*, 42 CIT __, 301 F. Supp. 3d 1359 (2018) ("*Aegis I*"). Specifically, Defendants contend that Customs must comply with pre-penalty procedures before it may bring a claim for unpaid duties. *See* Defs.' Cross-Mot. Summ. J. & Resp. Pl.'s Cross-Mot. Partial Summ. J., ECF No. 105 ("Defs.' Br."); Defs.' Reply Pl.'s Resp. Defs.' Cross-Mot. Summ. J., ECF No. 116; *see also* Defs.' R. 56.3 Stmt. Material Facts Supp. Mot. Summ. J., ECF No. 105; Defs.' Resp. Pl.'s R. 56.3 Stmt., ECF No. 105 ("Defs.' Resp. Pl.'s R. 56.3 Stmt.").

Additionally, Defendants argue that they do not owe duties on any of the entries in question because, notwithstanding the timing of its prior disclosure, the subject entries were eligible to enter duty-free under the Tariff Preference Levels Program. Defendants also argue that the Government is not entitled to summary judgment because genuine issues of fact exist as to whether Tricots acted with reasonable care when it made erroneous preference claims in its entry paperwork, and whether its statements were materially false with respect to a subset of unidentified entries. Finally, Defendants contend that they have a valid equitable recoupment counterclaim against the Government.

Jurisdiction is found under 28 U.S.C. § 1582 (2012). Because the dispositive issues in this case may be resolved as a matter of law, and there is no genuine issue of any material fact, the court grants summary judgment in favor of Plaintiff on its claims for unpaid duties and fees under 19 U.S.C. § 1592(d), plus interest, and denies Defendants' cross-motion for summary judgment.

## BACKGROUND

### I.      Overview of Preferential Tariff Treatment Under NAFTA

NAFTA was implemented into U.S. law on December 8, 1993, for the purpose of promoting the free flow of goods among the United States, Canada, and Mexico. *See* North American Free Trade Implementation Act § 202, 19 U.S.C. § 3311 (1994); *Corrpro Companies, Inc. v. United States*, 433 F.3d 1360, 1362 (Fed. Cir. 2006). To accomplish this goal, the agreement provides for the elimination of most tariffs collected on goods originating from the three countries. *Corrpro*, 433 F.3d at 1362; *see also* 19 U.S.C. § 3332(a)(1) (setting out rules for determining when a good "originates in the territory of a NAFTA country"); NAFTA Rules of Origin Regulations, 19 C.F.R. pt. 181 app., pt. II, § 4; General Note 12(b), Harmonized Tariff Schedule of the United States.

### A.      Claiming Preferential Tariff Treatment Under NAFTA Rules of Origin

Preferential tariff treatment under NAFTA is not automatic—it must be claimed. For originating goods, preferential tariff treatment can mean the elimination of not only duties, but also merchandise processing fees.[6] *See* 19 U.S.C. § 58c(a)(10). Customs' regulations set out the procedure to make a claim that a good is originating:

§ 181.21 Filing of claim for preferential tariff treatment upon importation

(a) *Declaration*. In connection with a claim for preferential tariff treatment, or for the exemption from the merchandise processing fee, for a good under the NAFTA, the U.S. importer must make a formal declaration that the good qualifies

---

[6]      Merchandise processing fees are administrative fees owed on most imports into the United States. "[M]erchandise that is formally entered or released is subject to the payment to [Customs] of an ad valorem fee." 19 C.F.R. § 24.23(b)(1)(i)(A). The fee "is due and payable to [Customs] by the importer of record of the merchandise at the time of presentation of the entry summary and is based on the value of the merchandise as determined under 19 U.S.C. 1401a." *Id.* § 24.23(b)(1)(i)(A)-(B). It shall not exceed $485, and must not be less than $25. *Id.*

for such treatment. The declaration may be made by including on the entry summary, or equivalent documentation, including electronic submissions, the symbol "CA" for a good of Canada, or the symbol "MX" for a good of Mexico, as a prefix to the subheading of the HTSUS under which each qualifying good is classified. *Except . . . in the case of a good to which Appendix 6.B to Annex 300–B of the NAFTA applies*[7] *(see also 19 CFR 102.25), the declaration must be based on a complete and properly executed original Certificate of Origin,*[8] *or copy thereof, which is in the possession of the importer and which covers the good being imported.*

19 C.F.R. § 181.21(a) (emphasis added); *see also* 19 C.F.R. § 181.0 ("[Part 181] implements the duty preference and related Customs provisions applicable to imported goods under [NAFTA]," and sets out "procedures and other requirements . . . [that] are in addition to the Customs procedures and requirements of general application.").

Normally, a formal declaration is made "upon importation," as provided in 19 C.F.R. § 181.21(a). Customs' regulations provide, however, that "free entry" documentation may be filed after entry, so long as the filing is made before liquidation[9] becomes final:

§ 10.112 Filing free entry documents or reduced duty documents after entry

Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or

---

[7]       NAFTA provides for annual quantitative limits, or quotas, on certain textile and apparel products that are made from "non-originating" materials, *i.e.*, from materials (such as yarn) that are produced by non-NAFTA suppliers. *See* NAFTA, Annex 300-B, app. 6.B.4(a). As discussed in Part I.B of this opinion, for such products, importers must submit to Customs a Certificate of Eligibility.

[8]       "NAFTA Certificate of Origin" is defined by statute as "the certification, established under article 501 of [NAFTA], that a good qualifies as an originating good under such Agreement." 19 U.S.C. § 1508(b)(1)(B).

[9]       Liquidation is the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

statement may be filed *at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final.*

19 C.F.R. § 10.112 (emphasis added). In other words, once liquidation has become final, Customs' regulations provide that an importer may no longer seek to claim preferential tariff treatment of its entries.

In the event that an importer erroneously claims preferential tariff treatment under the NAFTA Rules of Origin, to avoid penalties, the importer may make a prior disclosure to self-report the error to Customs by filing a corrected declaration and paying any duties owing:

> (5) Prior disclosure regarding NAFTA claims
>
> An importer shall not be subject to penalties under [19 U.S.C. § 1592(a)] for making an incorrect claim for preferential tariff treatment under [19 U.S.C. § 3332 (Rules of Origin)] if the importer—
>
>> (A) has reason to believe that the NAFTA Certificate of Origin . . . on which the claim was based contains incorrect information; and
>>
>> (B) in accordance with regulations issued by the Secretary, voluntarily and promptly makes a corrected declaration and pays any duties owing.

19 U.S.C. § 1592(c)(5).[10] Customs' regulations set out procedures for making a "corrected declaration":

---

[10]     "With [the NAFTA Implementation Act], Congress approved NAFTA, as well as a 'statement of administrative action' that was submitted with the legislation." *Bestfoods v. United States*, 165 F.3d 1371, 1374 (Fed. Cir. 1999) (citing 19 U.S.C. § 3311(a)). The NAFTA statement of administrative action provides, with respect to prior disclosures:

> Generally, importers who make false declarations of NAFTA origin to the Customs Service, and persons who make false statements in NAFTA certificates of origin, will be liable for penalties under [19 U.S.C. § 1592] for fraud, gross negligence or negligence, as appropriate. . . . [T]he bill amends [19 U.S.C. § 1592] to exempt from penalty U.S. exporters or producers who make false certifications if they voluntarily and promptly notify in writing all persons to whom the person provided the certificate of origin of its falsity.

(footnote continued . . .)

(b) *Corrected declaration*. If, after making the declaration required under paragraph (a) of this section . . . , the U.S. importer has reason to believe that a Certificate of Origin on which a declaration was based contains information that is not correct, the importer shall within 30 calendar days after the date of discovery of the error make a corrected declaration and pay any duties that may be due. A corrected declaration shall be effected by submission of a letter or other written statement to the [Customs] office where the original declaration was filed.

19 C.F.R. § 181.21(b). Thus, perfecting a prior disclosure requires an importer both to inform Customs of the error and to pay any duties owing on its entries with respect to which the erroneous declaration was made.

### B.    Claiming Preferential Tariff Treatment Under the Tariff Preference Levels Program

NAFTA provides for annual quantitative limits, or quotas, on certain textile and apparel products that are made from "non-originating" materials, *i.e.*, from materials (such as yarn) that are produced by non-NAFTA suppliers. *See* NAFTA, Annex 300-B, app. 6.B.4(a). The Tariff Preference Levels Program is a quota program that applies to these products. *See* Johnson Decl. (Feb. 9, 2017), ECF No. 89-8, Ex. 14 (Customs Directive No. 3550-085) (the "Directive").[11]

"NAFTA [Tariff Preference Level] rules allow duty free treatment on knitted fabrics produced in Canada from non-NAFTA yarns that do not meet the NAFTA [Rules of Origin], up to a certain quantity per year." *Aegis I*, 42 CIT at __, 301 F. Supp. 3d at 1362 n.6. Although goods entered under the Tariff Preference Levels Program are not subject to duties, "[a]ll [such] goods . . . are subject to merchandise processing fees." Directive ¶ 6.1; *see also Aegis I*, 42 CIT

---

THE NORTH AMERICAN FREE TRADE AGREEMENT ACT STATEMENT OF ADMINISTRATIVE ACTION, H.R. DOC. NO. 103-159, vol. 1, at 507 (1993).

[11]    In addition to Customs' regulations, Customs Directive No. 3550-085 provides guidelines for filing and processing claims under the Tariff Preference Levels Program. Customs has also produced a series of informed compliance publications dealing with the trade of textiles under NAFTA. *See, e.g.*, Johnson Decl. (Feb. 9, 2017), ECF 89-8, Ex. 11.

at __, 301 F. Supp. 3d at 1362 n.6 ("[Merchandise processing fees] are owed on NAFTA [Tariff

Preference Level] imports . . . .").

The regulations set out the procedure to claim eligibility for Tariff Preference Levels

treatment of non-originating textile and apparel products:

> § 102.25 Textile or apparel products under the North American Free Trade
> Agreement
>
> In connection with a claim for NAFTA preferential tariff treatment involving non-
> originating textile or apparel products subject to the tariff preference level
> provisions of appendix 6.B to Annex 300–B of the NAFTA and Additional U.S.
> Notes 3 through 6 to Section XI, Harmonized Tariff Schedule of the United
> States, the importer must submit to [Customs] a Certificate of Eligibility . . .
> covering the products. The Certificate of Eligibility . . . must be properly
> completed and signed by an authorized official of the Canadian or Mexican
> government and must be presented to [Customs] at the time the claim for
> preferential tariff treatment is filed under § 181.21 of this chapter. If the Center
> director is unable to determine the country of origin of the products, they will not
> be entitled to preferential tariff treatment or any other benefit under the NAFTA
> for which they would otherwise be eligible.

19 C.F.R. § 102.25. Thus, in the case of non-originating textiles from Canada, in order to

establish eligibility under the Tariff Preference Levels Program, the importer must obtain a

Certificate of Eligibility from the Canadian Department of Foreign Affairs and International

Trade. *See* Directive ¶ 6.3.2.8 ("A [Certificate of Eligibility] application must be properly

completed by an applicant and submitted to the Department of Foreign Affairs and International

Trade (DFAIT). If approved, a DFAIT official's signature, on behalf of the Minister of Foreign

Affairs, will be embedded onto the bottom left portion of the [Certificate of Eligibility].").

Generally, a Certificate of Eligibility is filed at the time a claim for preferential tariff

treatment is made under 19 C.F.R. § 181.21, *i.e.*, "upon importation." *See* 19 C.F.R. § 181.21;

*see also id.* § 102.25 ("[A] Certificate of Eligibility . . . must be presented to [Customs] at the

time the claim for preferential tariff treatment is filed under § 181.21."). In accordance with

§ 10.112 of Customs' regulations, however, post-entry claims for preferential treatment are permitted, but they must be made prior to liquidation of the subject entries becoming final. *See id.* § 10.112 ("[Documentation for duty-free or reduced duty entry] may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before liquidation becomes final."). Moreover, to be a valid post-entry claim, the regulations require that the Certificates of Eligibility accompany the claim. *See id.* § 102.25 (emphasis added) ("[Certificates of Eligibility] must be presented to [Customs] *at the time the claim for preferential tariff treatment is filed under [19 C.F.R. § 181.21].*").

## II.     Facts Material to Plaintiff's Unpaid Duties Claims Under 19 U.S.C. § 1592(d)

### A.     Tricots' Declaration Upon Importation

Between November 17, 2005, and December 23, 2008, Tricots imported 875 entries of fabric into the United States from Canada, declaring to Customs that each entry was eligible for preferential tariff treatment under NAFTA Rules of Origin because the fabric originated in a NAFTA country. Pl.'s R. 56.3 Stmt. ¶ 1; Defs.' Resp. Pl.'s R. 56.3 Stmt ¶ 1. On 874 of its entries, Tricots made its  claims by including on the entry summaries (1) the "CA" indicator, denoting that the goods qualified for duty-free treatment under NAFTA; (2) the "01" entry-type code, indicating that the goods were "free" or "dutiable" consumption entries; and (3) a calculation showing that no duties or merchandise processing fees were owed on the goods. For one entry—WFN-80098854, entered May 19, 2006—Tricots included on its entry summary (1) the "CA" indicator, denoting that the goods qualified for duty-free treatment under NAFTA; and (2) a calculation showing that no duties or merchandise processing fees were owed on the goods. *See* Pl.'s R. 56.3 Stmt. ¶ 1; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 1.

In the Certificates of Origin filed with its entries, Tricots stated that "[t]he good [covered by the Certificate] is produced entirely in the territory of one or more of the NAFTA countries exclusively from originating materials." Defs.' Mot. Dismiss, ECF No. 76-1, Ex. A. In other words, Tricots claimed that all 875 entries were made in Canada exclusively from originating materials.

Six hundred four of the subject entries for which the Government is seeking lost revenue (duties and fees) were covered by a continuous bond, in the amount of $230,000, issued by Aegis. *See* Pl.'s R. 56.3 Stmt. ¶ 2; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 2. The bond was effective as of November 17, 2002, and remained in force for each succeeding annual period until it was terminated on November 29, 2007. *See* Johnson Decl. (Feb. 9, 2017), ECF No. 89-8, Ex. 1.

All of Tricots' entries liquidated, pursuant to 19 U.S.C. § 1514, before 2010. *See* Pl.'s R. 56.3 Stmt. ¶ 4; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 4. Tricots did not file a protest with respect to any of the entries. *See* Pl.'s R. 56.3 Stmt. ¶ 5; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 5. By May 5, 2010, liquidation of the entries had become final, free of duties and fees, under 19 U.S.C. § 1514. *See* Pl.'s R. 56.3 Stmt. ¶ 5; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 5.

### B.    Tricots' Effort to Make a Prior Disclosure and Correct Its Declaration

After liquidation of the subject entries became final, by letter dated May 28, 2010, Tricots sought prior disclosure treatment, under 19 U.S.C. § 1592(c), and notified Customs that its "claim for preferential tariff treatment under [the] NAFTA [Rules of Origin] for some of the [entered] merchandise cannot be supported for exportations from 2005 to April 1, 2010," a period that encompassed the subject entries. *See* Defs.' Mot. Dismiss, ECF No. 76-1, Ex. B at 1. According to the letter, Tricots made this discovery pursuant to an internal review that it undertook "as a result of a number of Requests for Information . . . from the Port of Champlain,

New York," where the subject fabric entered the United States. *See* Defs.' Mot. Dismiss, ECF

No. 76-1, Ex. B at 1. By way of explanation of its error, Tricots stated:

> [T]here was not sufficient attention paid [by Tricots' former compliance specialist] to whether the goods were [Tariff Preference Level] or NAFTA [originating].

Defs.' Mot. Dismiss, ECF No. 76-1, Ex. B at 2; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 9.

On December 1, 2010, for the purpose of "complet[ing] the prior disclosure" and

"provid[ing] information concerning the amount of [m]erchandise [p]rocessing [f]ee[s] which

would have been due had the entry been made correctly," Tricots supplemented its May 28, 2010

letter with a second letter that calculated the fees it claimed were owed on its imports under the

Tariff Preference Levels Program. *See* Defs.' Mot. Dismiss, ECF No. 76-1, Ex. D at 2. Although

the prior disclosure statute and Customs' regulations required that the disclosing party "pay any

duties that may be due," Tricots did not do so, because, it maintained, no duties were owed. *See*

19 C.F.R. § 181.21(b). Rather, Tricots maintained that the entries were eligible for duty-free

entry under the Tariff Preference Levels Program. In making this claim, however, Tricots did not

submit a Certificate of Eligibility for any of the subject imports.

### C.    Customs' Rejection of Tricots' Prior Disclosure

Following Tricots' December 1, 2010 letter, Customs notified Tricots' counsel that it had

reviewed the company's submission, and although Tricots had accounted for the merchandise

processing fees that were due, the company had "not accounted for the [d]uty due," and,

moreover, that "[Customs'] policy is *that if a company has failed to present Certificates of*

*Eligibility by the time of final liquidation, this precludes that company from receiving the duty*

*preference under [Tariff Preference Levels Program]*."[12] Defs.' Br., ECF No. 105-1, Ex. T at 2
(emphasis added).

Subsequently, by letter dated May 23, 2011, Customs notified Tricots of the amount of
duties and fees owed. It stated that after carefully reviewing Tricots' correspondence, the
information Tricots' office provided, and each of the entries at issue, Customs had concluded
that Tricots owed $2,249,196.04 in lost revenue, representing $2,206,596.05 in unpaid duties and
$42,599.99 in unpaid fees. The letter also notified Tricots that, following its deposit of the full
amount owed, the company could seek review of Customs' calculations as provided in the
regulations.[13] Tricots was given until June 24, 2011 to tender the amounts owed, which, for
Customs, would perfect the prior disclosure. *See Aegis I*, 42 CIT at __, 301 F. Supp. 3d at 1363.

Rather than tender the amounts owed, on June 22, 2011, Tricots submitted an offer in
compromise of $85,199.98, representing twice the amount of the unpaid merchandise processing
fees it claimed were due on the entries. *See* Defs.' Br., ECF No. 105-1, Ex. T at 8. In response,
on December 7, 2011, Customs sent Tricots a letter stating that its entries did not qualify for
prior disclosure treatment under 19 U.S.C. § 1592(c) because the company "did not tender the

---

[12]     According to Customs Ruling HQ 229504, "an importer ha[s] until liquidation to
supply the Certificates of Eligibility, and the opportunity to request delay of liquidation if
necessary." Johnson Decl. (Feb. 9, 2017), Ex. 9 at 5. Here, Tricots did not supply Certificates of
Eligibility for the subject entries until August 2012—more than two years after final liquidation.

[13]     Under Customs' regulations, in order to perfect a prior disclosure, a disclosing
party must "tender any actual loss of duties, taxes and fees or actual loss of revenue." 19 C.F.R.
§ 162.74(c) ("The disclosing party may choose to make the tender either at the time of the
claimed prior disclosure, or within 30 days after [Customs] notifies the person in writing of
[Customs'] calculation of the actual loss of duties, taxes and fees or actual loss of revenue.").
The regulations provide that a disclosing party may ask Customs Headquarters to review the
calculations. If, in its discretion, Headquarters grants the review, its decision is final. *Id.*

total amount owed by [June 24, 2011]" and therefore did not "perfect its prior disclosure." Defs.'

Br., ECF No. 105-1, Ex. F.

**D.     Customs' Demands for Unpaid Duties**

On February 16, 2012, Customs demanded payment of unpaid duties from Tricots in the

amount of $2,249,196.04. *See* Defs.' Br., ECF No. 105-1, Ex. G. Customs also demanded

payment from Aegis of $500,113.32, the amount of duties owed on the 604 entries secured by its

bond. *See* Johnson Decl. (Feb. 9, 2017), ECF No. 89-8, Ex. 19. Demands were sent to Aegis on

May 18, 2011, May 31, 2011, and June 9, 2011. *See* Compl., ECF No. 2 ¶ 21; Answer, ECF No.

13 ¶ 21. Aegis did not respond to any of the demands. *See* Compl. ¶ 21; Answer ¶ 21. No duties

or fees have been paid on any of the 875 entries.

**III.     CIT Litigation**

On September 27, 2011, pursuant to 19 U.S.C. § 1592(d), the Government commenced

an action against Aegis for unpaid duties and merchandise processing fees owed on the 604

entries covered by its bond. On January 19, 2012, Aegis filed its Answer and a Third-Party

Complaint against Tricots, as Third-Party Defendant, for indemnification of any amount Aegis

was ordered to pay on Plaintiff's claim. *See generally* Compl.; Answer; Third-Party Compl.,

ECF No. 37.

Separately, on April 25, 2016, the Government sued Tricots to recover (1) civil penalties,

pursuant to 19 U.S.C. § 1592(b), and (2) unpaid duties and merchandise processing fees on all

875 of the entries, pursuant to 19 U.S.C. § 1592(d).[14] *See* Compl., *United States v. Tricots Liesse 1983, Inc.*, No. 16-00066 (CIT Apr. 24, 2016), ECF No. 2. Tricots filed an Answer in which it asserted a counterclaim for equitable recoupment against the Government. *See* Answer, *United States v. Tricots Liesse 1983, Inc.*, No. 16-00066 (CIT Sept. 2, 2016), ECF No. 14.

On August 4, 2016, the Government's lawsuit against Tricots was consolidated *sub nom United States v. Aegis Security Insurance Company*, Consol. Court No. 11-00388. *See* Order dated Aug. 4, 2016, ECF No. 68.

After consolidation, Defendants moved to dismiss the Government's civil penalty claim and its unpaid duties claims for lack of subject matter jurisdiction on the ground that the Government failed to exhaust its administrative remedies. Plaintiff opposed the motion and cross-moved for partial summary judgment solely as to its claims for unpaid duties and fees. The court stayed briefing on Plaintiff's cross-motion pending its decision on the motion to dismiss. *See* Order dated May 5, 2017, ECF No. 86.

In *Aegis I*, the court converted Defendants' motion to dismiss into a motion for summary judgment. As to the penalty claim, the court agreed with Defendants that the Government had failed to exhaust its administrative remedies because "the facts demonstrate that, despite Tricots' efforts, Customs did not follow the statutory injunction to provide the company with a 'reasonable opportunity' to make oral representations 'seeking remission or mitigation of the monetary penalty' following issuance of the Notice of Penalty, and thus did not provide Tricots with the statutorily required opportunity to be heard" under 19 U.S.C. § 1592(b)(2). *Aegis I*, 42 CIT at __, 301 F. Supp. 3d at 1368. Accordingly, "[b]ecause Customs failed to exhaust its

---

[14]     Tricots executed a number of waivers that extended the statute of limitations through August 18, 2016. *See* Defs.' Br., ECF No. 105-1, Ex. C.

administrative remedies and thus failed to perfect its penalty claim, Tricots' motion for summary judgment [was] granted in part, and the court award[ed] summary judgment in favor of Tricots on [P]laintiff's penalty claim." *Id.*, 42 CIT at __, 301 F. Supp. 3d at 1361.

On May 23, 2018, the court lifted the stay of briefing on the Government's previously-filed cross-motion for summary judgment on its unpaid duties claim. *See* Order dated May 23, 2018, ECF No. 98. Defendants filed a cross-motion for summary judgment, asking the court to dismiss Plaintiff's claims for unpaid duties and fees. *See* Defs.' Br. 47. For its part, Plaintiff asks the court to enter judgment in its favor on its unpaid duties claims (1) against Tricots for $2,249,196.04, representing $2,206,596.05 in duties and $42,599.99 in merchandise processing fees, plus equitable prejudgment interest, and post-judgment interest, and (2) against Aegis for $500,113.32, plus mandatory interest under 19 U.S.C. § 580, equitable prejudgment interest, and post-judgment interest. *See* Pl.'s Br. 28, 32.

## STANDARD OF REVIEW

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Ct. Int'l Tr. R. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## LEGAL FRAMEWORK

Under 19 U.S.C. § 1592(a)(1), "no person, by fraud, gross negligence, or negligence . . . may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the

United States by means of" material and false documents, information, acts, or omissions.[15] If a party violates 19 U.S.C. § 1592(a), "[t]he statutory scheme provides the United States with means both (1) to impose a penalty for the improper conduct *and* (2) to recover import duties lost as a result of the improper conduct." *United States v. Blum*, 858 F.2d 1566, 1569 (Fed. Cir. 1988); *see also* 19 U.S.C. § 1592(b) (penalty claims), (d) (unpaid duties claims).

## I.     Penalty Claims

The Government's penalty claim is no longer at issue because it was dismissed in *Aegis I.* To understand Defendants' argument for dismissal of the Government's unpaid duties claims, however, Customs' regulations on penalties procedures are discussed briefly below.

Subsection (b) of 19 U.S.C. § 1592 sets out the procedures that the United States must follow before it may perfect a penalty claim. *See United States v. Int'l Trading Servs.*, 40 CIT __, __, 190 F. Supp. 3d 1263, 1269 (2016) (citation omitted) ("Section 1592(b) states the procedures

---

[15]        In full text, subsection 1592(a)(1) reads:

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

> (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

> (ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

19 U.S.C. § 1592(a)(1).

by which the United States must exhaust administrative remedies; to wit, 'Customs must perfect its penalty claim in the administrative process . . . by issuing a pre-penalty notice and a notice of penalty.'"). These procedures state that if Customs has reason to believe that a violation of § 1592(a) has occurred, "and determines that further proceedings are warranted," it must first issue a written pre-penalty notice to any person concerned, stating "its intention to issue a claim for a monetary penalty." 19 U.S.C. § 1592(b)(1)(A). The notice must contain several pieces of information provided for in § 1592(b), including "whether the alleged violation occurred as a result of fraud, gross negligence, or negligence," "the estimated loss of lawful duties, . . . the amount of the proposed monetary penalty," and must also "inform such person that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty should not be issued in the amount stated." 19 U.S.C. § 1592(b)(1)(A)(v)-(vii).

The court held in *Aegis I* that "[b]ecause Customs failed to exhaust its administrative remedies and thus failed to perfect its penalty claim, Tricots' motion for summary judgment [was] granted in part, and the court award[ed] summary judgment in favor of Tricots on [P]laintiff's penalty claim." *Aegis I*, 42 CIT at __, 301 F. Supp. 3d at 1361. Thus, the sole remaining claims before the court are Plaintiff's claims for unpaid duties and fees, under 19 U.S.C. § 1592(d).

## II.    Unpaid Duties Claims

Subsection 1592(d) requires Customs to "restore" unpaid duties, taxes, and fees due on entries, even if the entries have been finally liquidated:

> *Notwithstanding [19 U.S.C. § 1514[16]], if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)], the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.*

19 U.S.C. § 1592(d) (emphasis added). In other words, the finality of liquidation is not a bar to the Government's collection of unpaid duties, taxes, and fees.

Additionally, a claim for lost import duties is judicially enforceable, irrespective of whether the United States pursues a penalty claim, as the plain language of subsection (d) makes clear. *Id.* As the Federal Circuit held in *United States v. Blum*, 858 F.2d 1566 (Fed. Cir. 1988):

> The plain language of subsection (d) provides for recovery of lost import duties resulting from a violation of subsection (a). Under this provision, import duties lost as a result of a violation of subsection (a) are recoverable by the United States "whether or not a monetary penalty [. . .] is assessed." We hold that such a claim is judicially enforceable pursuant to subsection (d).

*Blum*, 858 F.2d at 1569. The *Blum* Court further stated:

> Subsection (d) is not a penalty provision; rather, subsection (d) allows the United States to recover lawful duties lost as a result of a violation of subsection (a). Lawful duties are those that would have been collected by the United States but for the violation of subsection (a).

*Id.*

Relying on *Blum*, this Court has ruled that "subsection [(d)] creates an independent cause of action," and the "government's right to recover unpaid duties under section 1592(d) does not depend on its right to obtain penalties . . . ." *United States v. Nitek Elecs., Inc.*, 36 CIT 546, 557, 844 F. Supp. 2d 1298, 1309 (2012), *aff'd on other grounds*, 806 F.3d 1376 (Fed. Cir. 2015) (first citing *Blum,* 858 F.2d at 1568-69, then quoting *United States v. Jac Natori Co.*, 108 F.3d 295, 299 (Fed. Cir. 1997)); *see also United States v. Aegis Sec. Ins. Co.*, 29 CIT 1263, 1265, 398 F.

---

[16]     Section 1514 provides that Customs' decisions are "final and conclusive upon all persons" unless a protest is timely filed. 19 U.S.C. § 1514(a).

Supp. 2d 1354, 1356 (2005) (citing *Blum*, 858 F.2d at 1569-70) ("[S]ection 1592(d) 'require[s]' restoration of duties, irrespective of penalty assessment.").

Moreover, unlike with penalty claims, "the government need not exhaust administrative remedies prior to seeking recovery of lost duties"—*i.e.*, "[s]ection 1592 does not provide any administrative process for imposing lost duty claims." *Nitek*, 36 CIT at 557, 844 F. Supp. 2d at 1309 (citing *Aegis*, 29 CIT at 1265, 398 F. Supp. 2d at 1355). This Court has rejected the argument that that "because the statutory provision enabling the United States to collect duties [*i.e.*, subsection (d)] is contained within the same section [*i.e.*, § 1592] that outlines the penalty assessment procedures [*i.e.*, subsection (b)] that those procedures are applicable to a duty claim brought by the United States." *United States v. Ross*, 6 CIT 270, 271, 574 F. Supp. 1067, 1068-69 (1983) (footnote omitted). Examining the relevant statutory language,[17] the *Ross* Court found:

> Section 1592(d), taken at face-value, demonstrates that the United States need not follow the elaborate penalty procedures when pursuing a duty claim. Subsections (b) and (c) of § 1592 are cast in such terms as "monetary penalty" or "penalty claim." Subsection (d) alone deals with "lawful duties" and makes no reference to the preceding matters.

*Id.*, 6 CIT at 271, 574 F. Supp. at 1069.

Subsection (d) does not, by its terms, identify the parties against whom the United States may seek to "restore" unpaid duties. The *Blum* Court held that the United States may seek the

---

[17]     The *Ross* Court applied the 1982 version of 19 U.S.C. § 1592(d), which is substantially the same as the 2012 version of the law. The difference is that where the 1982 version speaks of the deprivation of solely "lawful duties," the 2012 version speaks of the deprivation of "lawful duties, taxes, and fees." *Compare* 19 U.S.C. § 1592(d) (1982) ("[I]f the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed.") *with* 19 U.S.C. § 1592(d) (2012) ("[I]f the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)], the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.").

unpaid duties not only from the party that violated § 1592(a), but also "from those parties traditionally liable for such duties, *e.g.*, the importer of record and its surety." *Blum*, 858 F.2d at 1570. A surety's liability flows solely from its contractual obligations under its bond. It pays, if the importer does not pay, upon a demand on the bond by the Government. A surety's liability is limited to the face amount of the bond, plus statutory interest under 19 U.S.C. § 580. *See* 19 C.F.R. § 113.62(a) ("Agreement to Pay Duties, Taxes, and Charges").

Finally, subsection (e) of the statute provides that, in any proceeding based on negligence, such as the Government's claim here, "the United States shall have the burden of proof to establish the act or omission constituting the violation." 19 U.S.C. § 1592(e)(4). The Government's burden of proof is to establish by a preponderance of the evidence that Tricots committed an act or omission constituting a negligent violation of § 1592(a). *See United States v. Deladiep, Inc.*, 41 CIT __, __, 255 F. Supp. 3d 1326, 1337 (2017).

If the Government meets its burden, "the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4). The alleged violator satisfies its burden of proof by "affirmatively demonstrat[ing] that it exercised reasonable care under the circumstances." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006) ("Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances."). Reasonable care may be demonstrated, if, for example, an importer can show that it had "an honest, good faith professional disagreement" with its counsel "as to correct classification of a technical matter." *United States v. Optrex Am., Inc.*, 32 CIT 620, 630-31, 560 F. Supp. 2d 1326, 1336 (2008) (quoting H.R. REP. NO. 103-361 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2670). On the other hand, "the failure to follow a

binding [Customs] ruling is a lack of reasonable care." *Id.*, 32 CIT at 631, 560 F. Supp. 2d at

1335-36.


## DISCUSSION

### I.    Plaintiff's Unpaid Duties Claims Are Not Barred

Defendants argue that Plaintiff's claim for unpaid duties and merchandise processing fees

under § 1592(d) must be dismissed, as a matter of law, because Customs "failed to perfect a

valid determination that Tricots violated [subsection] 1592(a)." Defs.' Br. 10. They argue that

"to determine if a violation of [subsection] (a) [has] occurred, Customs must follow the

subsection (b) procedures." Defs.' Br. 11. That is, in Defendants' view, Customs must follow the

subsection (b) pre-*penalty* procedures not only to perfect a *penalty* claim, but also to perfect a

claim for *unpaid duties* under subsection (d). For Defendants, because the court has ruled that

Customs failed to follow the pre-penalty procedures set out in subsection (b), and therefore

dismissed the Government's penalty claim, the court must also dismiss the subsection (d) claims.

*See* Defs.' Br. 47.

Defendants' argument lacks merit. It is an incorrect statement of the law that "to

determine if a violation of [subsection] (a) [has] occurred, Customs must follow the subsection

(b) procedures" to establish a subsection (d) claim for unpaid duties. Whether Customs has

complied with the procedures in subsection (b) bears on whether Customs may pursue a *penalty*

claim for an alleged violation of subsection (a). By its terms, subsection (b) pertains to a "pre-

*penalty* notice," which, among other things, must "inform [a defendant] that he shall have a

reasonable opportunity to make representations, both oral and written, as to why a claim *for a*

*monetary penalty* should not be issued in the amount stated." 19 U.S.C. § 1592(b)(1)(A)(vii)

(emphasis added). Nowhere does the statute set out a procedure that the United States must follow before it seeks to recover unpaid duties under subsection (d). *See Nitek*, 36 CIT at 577, 844 F. Supp. 2d at 1309 (citation omitted) ("[T]he government need not exhaust administrative remedies prior to seeking recovery of lost duties.").

This Court has long held that "[subs]ection 1592(d), taken at face-value, demonstrates that the United States need not follow the elaborate penalty procedures when pursuing a duty claim." *Ross*, 6 CIT at 271, 574 F. Supp. at 1069. Indeed, the plain language of subsection (d) makes it clear that unpaid duty claims may proceed "whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d) (emphasis added) ("Customs . . . *shall require* that such lawful duties, taxes, and fees be restored, *whether or not a monetary penalty is assessed*."); *see also Aegis*, 29 CIT at 1265, 398 F. Supp. 2d at 1356 (citation omitted) ("[S]ection 1592(d) 'require[s]' restoration of duties, irrespective of penalty assessment."). Thus, the court holds that Plaintiff's unpaid duties claims are not barred.


## II.     Plaintiff's Unpaid Duties Claims Have Merit

### A.     Tricots' Violation of § 1592(a)

As has been discussed, no protest was filed with respect to the liquidation of any of Tricots' 875 entries. By May 5, 2010, liquidation of the subject entries had become final. *See Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) ("Without a timely protest, liquidations become final and conclusive under 19 U.S.C. § 1514."). The finality of liquidation, however, does not bar the Government's collection of duties, taxes, and fees according § 1592(d), which provides that "*[n]otwithstanding [19 U.S.C. § 1514]*, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)],

the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d) (emphasis added).

Subsection 1592(a) prohibits (1) negligently (2) entering merchandise into the commerce of the United States (3) by means of any statement, act, or omission (4) that is material (5) and false. *See* 19 U.S.C. § 1592(a)(1) ("[N]o person, by . . . negligence . . . may enter . . . any merchandise into the commerce of the United States by means of" material and false documents, information, acts or omissions). The Government has the burden of proof "to establish the act or omission constituting the violation" of subsection (a) by a preponderance of the evidence. *Id.* § 1592(e)(4); *see also Deladiep*, 41 CIT at __, 255 F. Supp. 3d at 1337. If the Government meets its burden, "the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence," *i.e.*, by "affirmatively demonstrat[ing] that it exercised reasonable care under the circumstances." *See* 19 U.S.C. § 1592(e)(4); *Ford Motor Co.*, 463 F.3d at 1279.

### 1.      Tricots' Negligence

Customs' regulations set out rules for determining the level of an importer's culpability under § 1592:

> A violation is determined to be negligent if it results from an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances either: (a) in ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's obligations under the statute; or (b) in communicating information in a manner so that it may be understood by the recipient. As a general rule, a violation is negligent if it results from failure to exercise reasonable care and competence: (a) to ensure that statements made and information provided in connection with the importation of merchandise are complete and accurate; or (b) to perform any material act required by statute or regulation.

19 C.F.R. pt. 171, app. B(C)(1); *see also* 19 U.S.C. § 1484(a)(1) (importer has a duty of

"reasonable care" when preparing entry documentation); *Optrex*, 32 CIT at 631, 560 F. Supp. 2d

at 1335-36 ("[T]he failure to follow a binding [Customs] ruling is a lack of reasonable care.").

Plaintiff insists that Tricots was negligent when it represented that its entries were

originating goods and therefore qualified for entry free of duties and fees under the NAFTA

Rules of Origin. In an attempt to defeat summary judgment, Defendants claim that there is a

genuine issue of material fact, and further discovery is warranted, as to whether Tricots acted

with reasonable care when it made erroneous preference claims in its entry paperwork:

> [Tricots] knew the fabric it produced in Canada qualified for duty free treatment
> under the NAFTA, but made incorrect preference claims. As soon as Tricots
> identified that it claimed one NAFTA provision over another in certain instances,
> it immediately corrected its claim with Customs. Its actions were not
> unreasonable and similarly situated companies in the same circumstances would
> have acted in the same fashion. The question of whether a party is negligent is
> fact specific and Tricots should be afforded the opportunity after complete
> discovery to show it was not negligent and acted as others would in the same
> circumstance.

Defs.' Br. 43. In other words, in Tricots' view, whether it exercised reasonable care to ensure its

statements to Customs were complete and accurate is a question that cannot be answered based

on the information before the court, but rather requires further discovery from other importers

about what they would have done if they had made the subject entries.

The standard to determine whether a party has acted negligently is set out in the

regulations. 19 C.F.R. pt. 171, app. B(C)(1). Based on Tricots' admissions, there can be little

doubt that it failed to act with "reasonable care and competence" when declaring at the time of

importation that each of its 875 entries qualified for preferential tariff treatment under the

NAFTA Rules of Origin. In Tricots' words, "the imported fabric at bar was mistakenly entered

and liquidated for duty-free entry as NAFTA-originating goods when in fact the fabric qualified

for duty-free treatment under the NAFTA Preference Tariff Level . . . quota program for fabrics knitted or woven in a NAFTA country from non-originating materials." Tricots' Answer to Third-Party Compl. ¶ 8.

Tricots has admitted that its mistake was the result of inattention: "[B]ecause [Tricots] was a small manufacturer and importer . . . there was not sufficient attention paid by [its] former compliance specialist as to whether [its] products qualifie[d] for NAFTA [Tariff Preference Level] or NAFTA [Rules of Origin]." Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 9; *see also* Defs.' Mot. Dismiss, ECF No. 76-1, Ex. B at 2. Tricots, then, admits that it made a mistake, but insists that because it acted as other similarly situated importers would have acted, it was not negligent. Even if it could demonstrate that others would have been similarly inattentive, however, Tricots' argument would be no more compelling. The test here is whether the company exercised the degree of reasonable care and competence expected from an importer in the same circumstances. Tricots has admitted that it failed to pay adequate attention to the origin of the materials used to make its products, which then resulted in the incorrect statement in the entry paperwork that its goods were NAFTA-originating. Tricots' behavior does not stem from, for example, "an honest, good faith professional disagreement as to correct classification of a technical matter"—but rather, from a lack of reasonable care. *See Optrex*, 32 CIT at 630-31, 560 F. Supp. 2d at 1336 (citation omitted).

Because the question of whether Tricots was negligent here requires the application of the reasonable care standard to the facts—*i.e.*, Tricots' conduct and statements to Customs, not what another company might have done—it is difficult to see any real purpose for more discovery. A finding that an act is reasonable or not does not rely on consensus in the community but on the application of reason. Here, the undisputed facts support the conclusion that Tricots—

by its inattention—was negligent in its statements to Customs that all of its entries were made from exclusively originating materials.

### 2.      Tricots Entered Merchandise into the United States

No party disputes that "Tricots imported 875 entries of fabric into the United States from Canada between November 17, 2005, and December 23, 2008, declaring to [Customs] that each entry was eligible for preferential tariff treatment under NAFTA because the fabric originated in a NAFTA country." Pl.'s R. 56.3 Stmt. ¶ 1; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 1.

### 3.      Tricots' Statements to Customs

It is also undisputed that Tricots stated in its entry paperwork that its merchandise was produced in Canada from NAFTA-originating materials:

> On 874 of its entries, Tricots made such claims [for preferential treatment] by including on its entry summaries (1) the "CA" indicator, indicating that the goods qualified for duty-free treatment under NAFTA; (2) the "01" entry-type code, indicating that the goods were "free" or "dutiable" consumption entries; and (3) a calculation indicating that no duties or [merchandise processing fees] were owed on the goods. . . . For one entry—WFN-80098854, entered May 19, 2006— Tricots included on its entry summary (1) the "CA" indicator, indicating that the goods qualified for duty-free treatment under NAFTA; and (2) a calculation indicating that no duties or [merchandise processing fees] were owed on the goods.

Pl.'s R. 56.3 Stmt. ¶ 1; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 1. In the Certificates of Origin, Tricots stated that "[t]he good [covered by the Certificate] is produced entirely in the territory of one or more of the NAFTA countries exclusively from originating materials." Defs.' Mot. Dismiss, ECF No. 76-1, Ex. A.

### 4.      Tricots' Statements Were Material

Moreover, Tricots' statements were material. Regarding "materiality," the regulations provide:

> A document, statement, act, or omission is material if it has the natural tendency
> to influence or is capable of influencing agency action including, but not limited
> to a Customs action regarding: . . . determination of an importer's liability for
> duty . . . .

19 C.F.R. pt. 171, app. B(B). Tricots' entries received preferential tariff treatment based on its

representations in its entry paperwork that its merchandise was NAFTA-originating. *See* Pl.'s R.

56.3 Stmt. ¶ 1; *see also* Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 1. As a result, Tricots paid neither

duties nor merchandise processing fees at the time of entry. *See* Pl.'s R. 56.3 Stmt. ¶ 5; Defs.'

Resp. Pl.'s R. 56.3 Stmt. ¶ 5. Thus, Tricots' statements were "capable of influencing" and, in

fact, did influence Customs' action regarding determination of Tricots' liability for duty.

### 5.      Tricots' Statements Were False

Based on Tricots' statements in the entry paperwork, Customs concluded that neither

duties nor merchandise processing fees were due on any of Tricots' 875 entries. After liquidation

of the subject entries had become final, Tricots attempted to make a prior disclosure under 19

U.S.C. § 1592(c), to correct its claim that all of the entries were NAFTA-originating goods. *See*

Defs.' Mot. Dismiss, ECF No. 76-1, Ex. B & D. It stated that its entries were not made from

exclusively NAFTA-originating materials, but rather from "a combination of both [Tariff

Preference Levels Program-eligible] and [NAFTA-originating]" materials. Defs.' Mot. Dismiss,

ECF No. 76-1, Ex. D at 2. In other words, none of the 875 entries were made *exclusively* from

NAFTA-originating material, contrary to what Tricots declared in its entry summaries and

Certificates of Origin.

Defendants assert that there is a genuine issue of material fact as to whether "all 875

entries contained materially false statements." Defs.' Br. 41. Here, Defendants appear to argue

that it is possible, subject to further factual discovery, that their statements were not materially

false as to an unidentified subset of the entries. The evidence before the court shows that Tricots,

in its attempt to correct its original declaration, stated to Customs that each of the 875 entries,

which were identified as made from exclusively NAFTA-originating materials, should have been

identified as eligible for the Tariff Preference Levels Program, or as "a combination of both

[Tariff Preference Levels Program-eligible] and [NAFTA-originating]." Defs.' Mot. Dismiss,

ECF No. 76-1, Ex. D at 2. It is with respect to the subset that Tricots described as a

"combination" of originating and non-originating materials that Defendants appear to argue a

genuine issue of fact exists. Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 8 ("[Ninety-seven] entries have

products within [them] that qualified for NAFTA [Tariff Preference Levels] and NAFTA [Rules

of Origin].").

        The argument that a genuine factual issue exists as to whether Tricots' representation that

its entries were originating was "materially false" for the combination entries is difficult to

credit. First, it ignores that, as the manufacturer and importer of record, Tricots must have in its

possession the entry and production documentation that could conclusively resolve the issue. If

this documentation established that any of Tricots' entries, or the materials therein, qualified as

originating goods, Tricots would have brought it forward in its cross-motion for summary

judgment. Rather than doing so, however, Tricots does not even identify the entry numbers of the

entries with respect to which it claims a genuine issue of fact exists.

        Second, in its dismissal motion, Tricots stated that it sought, and obtained, Certificates of

Eligibility from the Canadian Department of Foreign Affairs and International Trade for all of

the subject entries, not a subset:

> [I]n May 2012, Tricots requested that [the Canadian Department of Foreign
> Affairs and International Trade] issue [Tariff Preference Level] certificates for *the
> subject exports made between 2005 and 2008*. After confirming that *the subject
> fabrics* qualified for duty free treatment under the NAFTA [Tariff Preference
> Level] rules, [the Canadian Department of Foreign Affairs and International
> Trade] issued Tricots the [Tariff Preference Level]  certificates in June and July

> 2012. On or about August 9, 2012, Tricots provided the [Tariff Preference Level] certificates to Customs (and [the U.S. Department of Justice]).

Tricots' Mem. Supp. Mot. Dismiss, ECF No. 76, 5 (emphasis added). In other words, Tricots' position before the Canadian authorities, and before the court in its motion to dismiss, was that the 875 subject entries were eligible for duty-free treatment under the Tariff Preference Levels Program, not as a combination of originating and non-originating goods.

Finally, there has already been discovery in this case. During discovery, Tricots represented to Customs that any amount of originating yarn included in the combination entries was so negligible that it disregarded it when calculating the total amount of revenue Customs lost as a result of Tricots' error. *See* Pl.'s Resp. Defs.' R. 56.3 Stmt. ¶ 7 (citing Letter from Tricots' Counsel to Government (May 23, 2014), ECF No. 80-17). Because Defendants have failed to show that there is a genuine issue of material fact with respect to the subset of entries it now claims were duty-free as a combination of originating materials and materials eligible for Tariff Preference Levels Program treatment, Plaintiff succeeds on summary judgment. In other words, Plaintiff wins because Tricots has not cited to, or even made reference to, any evidence that would support its assertion of a factual dispute, while the record has ample evidence that no genuine dispute exists.

Accordingly, the court finds that Plaintiff has met its burden to establish that Tricots violated 19 U.S.C. § 1592(a).

### B.    Plaintiff Is Entitled to Collect Unpaid Duties and Fees Under § 1592(d) from Tricots and Aegis

Where the United States has been deprived of lawful duties or fees as a result of a subsection (a) violation, § 1592(d) requires Customs to "restore" such "lawful duties . . . and fees." In full text, the statute provides:

(d) Deprivation of lawful duties, taxes, or fees

Notwithstanding [19 U.S.C. § 1514], if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)], the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.

19 U.S.C. § 1592(d). "Lawful duties are those that would have been collected by the United States but for the violation of subsection (a)." *Blum*, 858 F.2d at 1569.

Defendants argue that the United States has not been deprived of any duties it was owed because the subject entries were eligible for duty-free entry under the Tariff Preference Levels Program, as Tricots sought to establish by its prior disclosure. *See* Defs.' Br. 33 ("[B]ecause the correct NAFTA preference claim at the time of entry was duty free under the NAFTA [Tariff Preference Levels Program] rules, Customs was not 'deprived' of any duties and cannot 'recover' duties that would not have been owed.").

Defendants maintain that the law places no time limit on correcting declarations, or claiming eligibility for Tariff Preference Levels treatment. They point to the absence of a time limit in 19 U.S.C. § 1592(c) (covering NAFTA prior disclosures) and 19 C.F.R. § 181.21(b) (covering corrected declarations). The prior disclosure statute provides that a disclosure must be "voluntarily and promptly" made, and must be accompanied by payment of "any duties owing." 19 U.S.C. § 1592(c)(5). Subsection 181.21(b) of the regulations sets out the correction procedure: "[T]he importer shall within 30 calendar days after the date of discovery of the error make a corrected declaration and pay any duties that may be due." 19 C.F.R. § 181.21(b). Defendants read the statute and the regulation as requiring that the calculation of "any duties owing" be based on the corrected declaration, no matter when it is made. Defendants contend that "to correct" means "to set or make right," and "[t]his definition requires a *nunc pro tunc* application of the law." Defs.' Br. 28 (citation omitted). That is, in Defendants' view, "[t]he

plain language of the statute and regulations require[s] that duties owed as a result of any correction be determined according to what duties would have been owed if the 'correct' declaration was made at the time of entry." Defs.' Br. 28 (citations omitted). For Defendants, because Tricots' entries were beneficiaries of the Tariff Preference Levels Program, it only owes merchandise processing fees in the amount of $44,599.99.

For its part, the Government argues that Customs' regulations clearly establish the documentation necessary to claim eligibility under the Tariff Preference Levels Program, and the timing for making such a claim:

> In connection with a claim for duty-free treatment under the [Tariff Preference Levels] Quota Program, importers must (1) make "formal declaration[s]" that their goods qualify under the [Tariff Preference Levels] Quota Program, . . . *and* (2) submit Certificates of Eligibility to [Customs] covering the goods. . . . [Tariff Preference Levels] Certificates of Eligibility are expected to be presented at the time of entry, but [Customs] allows importers to submit them any time before liquidation or, if the entry has liquidated, before final liquidation.

Pl.'s Br. 23-24 (citing 19 C.F.R §§ 181.21(a), 102.25, 10.112); *see also* 19 C.F.R. 10.112 ("[Documentation for duty-free or reduced duty entry] may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before liquidation becomes final."). Plaintiff argues that, because Tricots failed to submit Certificates of Eligibility before the liquidation of the subject entries became final, it lost the opportunity to claim preferential tariff treatment under the Tariff Preference Levels Program:

> Tricots had numerous opportunities to submit Certificates of Eligibility before final liquidation of its entries. It could have submitted them when it entered the goods between 2005 and 2008 or before final liquidation as late as 2009, but it elected not to do so. Instead, Tricots submitted Certificates of Eligibility in August 2012—almost seven years after it first entered its goods, more than three years after all of its entries had finally liquidated, and more than two years after it admitted to its violations. So even assuming that Tricots has otherwise made a valid claim for duty-free treatment under the [Tariff Preference Levels] Quota Program, its right to duty-free treatment is foreclosed because it did not submit

the required Certificates of Eligibility before its entries finally liquidated under 19
U.S.C. § 1514.

Pl.'s Br. 27-28 (citations omitted). Therefore, for Plaintiff, while it might have been possible for

Tricots to qualify its merchandise for duty-free treatment under the Tariff Preference Levels

Program prior to the date liquidation became final, its failure to do so leaves it liable for regular

duties.

Accordingly, Plaintiff asks the court to grant its motion for summary judgment and award

it lost duties and merchandise processing fees:

> [B]ecause Tricots'[] goods were ineligible for preferential NAFTA treatment
> either as originating goods or under the [Tariff Preference Levels] Quota
> Program, they were dutiable at the general duty rate. . . . Because the majority of
> Tricots'[] goods were dutiable at the general rate of 12.3 percent *ad valorem*, and
> the remaining goods were dutiable at the general rate of 10.0 percent *ad valorem*,
> Tricots'[] material false statements and/or omissions on its 875 subject entries
> total to be $2,249,196.04, representing $2,206,596.05 in duties and $42,599.99 in
> [merchandise processing fees], and the lost revenue on the Aegis bonded entries
> was $1,653,291.07, of which $500,113.32, was covered by Aegis'[] bond.

Pl.'s Br. 28 (citations omitted).

The court finds that the United States has been deprived of lawful duties and fees as a

result of Tricots' violation of § 1592(a), and that the unpaid duties and merchandise processing

fees are due and owing to the Government from Tricots and from Aegis, as surety.[18] Preferential

tariff treatment under NAFTA—whether under the Rules of Origin or the Tariff Preference

Levels Program—is not automatic; it must be claimed in compliance with Customs' regulations.

*See* 19 C.F.R. §§ 181.21, 102.25, 10.112; *see also* General Note 12(b), Harmonized Tariff

Schedule of the United States. Put another way, unless an importer files the required

---

[18]     As noted, Aegis' liability for duties is solely contractual and is limited by the face
amount of the bond. *See* 19 C.F.R. § 113.62(a). As shall be seen, Aegis is also liable for statutory
interest under 19 U.S.C. § 580.

documentation with Customs *before the liquidation of its entries becomes final*, as provided in the statute and Customs' regulations, it has not established entitlement to duty-free treatment. *See* 19 U.S.C. § 1514; 19 C.F.R. § 10.112. Thus, the general rates of duty as set forth in the Harmonized Tariff Schedule of the United States apply to the subject entries.

Defendants seem to believe that merely by making a prior disclosure they can somehow turn back the clock, but that is not the case. It is undisputed that Tricots, through its negligent misrepresentations, entered the 875 subject entries as originating goods between 2005 and 2008. The entries liquidated free of duties and fees before 2010. No protests were filed, and liquidation of all the subject entries had become final by May 5, 2010. *See* 19 U.S.C. § 1514. Tricots' attempted prior disclosure on May 28, 2010, twenty-three days after the date liquidation became final, did not have the effect of undoing final liquidation and permitting Tricots to demonstrate entitlement to duty-free entry of its merchandise. To the extent that its prior disclosure talked about the Tariff Preference Levels Program, Tricots was mistaken because establishing that its goods were eligible under the program was impossible, as the time to submit any certificates demonstrating eligibility for duty-free treatment had passed. Therefore, the duties owing were the regular duties on its merchandise. That Tricots did not produce the required Certificates of Eligibility for another two years does not help its case. Accordingly, Tricots is liable for $2,249,196.04, representing $2,206,596.05 in duties and $42,599.99 in merchandise processing fees. *See* Johnson Decl. (Feb. 9, 2017), ECF No. 89-8, Ex. 3.

Aegis, as surety, is liable for lawful duties and fees owed on subject entries entered during the period covered by its bond. Six hundred four of the subject entries were covered by the continuous bond issued by Aegis. *See* Pl.'s R. 56.3 Stmt.  ¶ 2; Defs.' Resp. Pl.'s R. 56.3 Stmt. ¶ 2. The 604 subject entries were imported during the following time periods, while the

bond was in effect: from May 18, 2006, to November 16, 2006; from November 17, 2006, to

November 16, 2007; and from November 17, 2007 to November 27, 2007. The face amount of

the bond was $230,000 per annual period. Aegis' liability under the bond amounts to

$500,113.32, representing $230,000 for duties owed on the entries entered between May 18,

2006 and November 16, 2006; $230,000 for duties owed on entries entered between November

17, 2006 and November 16, 2007; and $40,113.32 for duties owed on entries entered between

November 17, 2007 and November 27, 2007. *See* Johnson Decl. (Feb. 9, 2017), ECF No. 89-8,

Ex. 20-22.

Finally, Defendants' argument that they have a valid equitable recoupment counterclaim

against the Government lacks merit. For Defendants, it is "patently inequitable" that they should

be made to pay duties on the subject entries because, ultimately, they obtained Certificates of

Eligibility from the Canadian authorities, which showed the goods were eligible for duty-free

treatment under the Tariff Preference Levels Program. *See* Def.'s Br. 40. It is settled law,

however, that equitable recoupment is unavailable in the case of the recovery of customs duties.

*See United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1013, 1014 n.2 (Fed. Cir. 1986). In *Federal*

*Insurance*, the Federal Circuit reversed this Court's holding that the government was equitably

estopped from collecting duties owed by an importer and its surety because "no equitable

estoppel can arise against the government in connection with an obligation to pay taxes." *Id.* at

1013 & 1014 n.2 (noting that the equitable recoupment counterclaim "fails . . . for the same

reason as the defense of estoppel"). Thus, Defendants' equitable recoupment counterclaim

presents no hurdle to the Government's collection of the duties owed.

**III.    Plaintiff Is Entitled to Collect Interest from Aegis and Tricots**

    **A.    Aegis' Liability for Statutory Prejudgment Interest Pursuant to 19 U.S.C. § 580**

In this collection action, the Government seeks an award of statutory prejudgment interest under 19 U.S.C. § 580, which provides that, "[u]pon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due." 19 U.S.C. § 580; Pl.'s Br. 29. As the Federal Circuit has explained:

> [S]ection 580 expressly requires that, when unpaid import duties upon a bond are awarded, interest be attached at the statutory rate "from the time when said bonds became due." As a matter of law, whenever a court awards unpaid import duties in a suit upon a bond, interest must be attached pursuant to section 580.

*United States v. Fed. Ins. Co.*, 857 F.2d 1457, 1459 (Fed. Cir. 1988). Here, the Government is seeking unpaid import duties from Aegis under a surety bond. Defendants do not dispute the award of § 580 interest, except to point out that Aegis "only owes interest on the 604 entries covered under its bond." Defs.' Br. 47. Accordingly, the Government is entitled to collect interest from Aegis at the rate of six percent per year from May 18, 2011, the date on which Customs demanded payment from Aegis on the 604 entries.

    **B.    Aegis' and Tricots' Liability for Mandatory Post-Judgment Interest Pursuant to 28 U.S.C. § 1961**

Next, Plaintiff seeks mandatory post-judgment interest from both Tricots and Aegis, pursuant to 28 U.S.C. § 1961, which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); Pl.'s Br. 31. Although § 1961 does not apply directly to the Court of International Trade, the Federal Circuit has confirmed this Court's authority to award post-judgment interest at the rate provided in §1961. *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1325-26 (Fed. Cir. 2013).

Specifically, 28 U.S.C. § 1585 provides that the Court of International Trade "posses[es] all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.

Defendants do not object to Plaintiff's claim that it is entitled to post-judgment interest, nor could they. "Post-judgment interest is not discretionary, but rather is available as a matter of right to prevailing parties." *United States v. Am. Home Assurance Co.*, 39 CIT __, __, 100 F. Supp. 3d 1364, 1374 (2015), *aff'd*, 857 F.3d 1329 (Fed. Cir. 2017) (citation omitted). Therefore, because Plaintiff has prevailed in this matter by means of an award of a money judgment against Defendants, it is entitled to post-judgment interest from Tricots and Aegis at the rate set forth in § 1961, calculated from the date of entry of the judgment. *See* 28 U.S.C. § 1961; *Am. Home Assurance Co.*, 39 CIT at __, 100 F. Supp. 3d at 1374.

   **C.      Plaintiff Is Not Entitled to Equitable Prejudgment Interest**

Plaintiff also seeks equitable prejudgment interest, arguing that "Tricots and Aegis should pay equitable pre-judgment interest as compensation for the lost use of funds over time." Pl.'s Br. 29. In determining whether to grant an award of equitable prejudgment interest, full compensation, including the time value of money, should be a court's primary concern. *See United States v. Am. Home Assurance Co.*, 789 F.3d 1313, 1329 (Fed. Cir. 2015); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). "In other words, if the United States has been compensated for the time value of its money by another provision, it is difficult to see why equity should direct that it may

collect an amount for this purpose again." *United States v. Am. Home Assurance Co.*, 39 CIT __,

__, 113 F. Supp. 3d 1297, 1315 (2015), *aff'd*, 776 F. App'x 712 (Fed. Cir. 2019).

In awarding the United States prejudgment statutory interest under the previously

discussed provision, the Federal Circuit, in *United States v. American Home Assurance Co.*,

reaffirmed the longstanding principle that "[i]n the absence of a statute governing the award of

prejudgment interest, 'the question [of prejudgment interest] is governed by traditional judge-

made principles.'" *Am. Home Assurance Co.*, 789 F.3d at 1328 (alterations in original) (quoting

*Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1367 (Fed. Cir. 2005)). Here, there is a

statute, 19 U.S.C. § 580, that has been found to provide prejudgment interest to the United States

for interest on bonds securing antidumping duties. Where a statute governs the award of

prejudgment interest (*i.e.*, § 580), the Federal Circuit has explained that "the award of

prejudgment interest [is] an equitable determination to be exercised at the discretion of the trial

judge." *Id.* (citing *United States v. Reul*, 959 F.2d 1572, 1577 (Fed. Cir. 1992); *United States v.*

*Imperial Food Imps.*, 834 F.2d 1013, 1016 (Fed. Cir. 1987)).

The court holds that Plaintiff is not entitled to an award of equitable prejudgment interest.

The reasoning in *American Home Assurance Co*. applies equally here:

> [T]he purpose of equitable interest is to ensure that the party be fully compensated
> for the time during which it was deprived of the use of the funds. Because [the
> Government] will be fully compensated by the statutory prejudgment interest it
> will receive by means of 19 U.S.C. § 580, here, the balance of equities tips in
> favor of [Defendants] and against an award of equitable prejudgment interest. In
> other words, it would be inequitable to award the United States *both* statutory
> prejudgment interest under § 580 *and* equitable prejudgment interest under the
> principles of equity.

*Am. Home Assurance Co.*, 39 CIT at __, 113 F. Supp. 3d at 1315. Accordingly, in view of the

court's holding that Plaintiff is entitled to statutory prejudgment interest under 19 U.S.C. § 580,

Plaintiff may not also recover equitable prejudgment interest in this case.

## CONCLUSION and ORDER

Based on the foregoing, Plaintiff's motion for summary judgment is granted, and Defendants' cross-motion for summary judgment is denied. It is hereby

**ORDERED** that the parties shall confer and jointly submit a proposed Judgment that sets out the amounts of duties, fees, and interest that Tricots and Aegis owe to Plaintiff, in accordance with this opinion. The proposed Judgment shall be submitted to the court on or before December 31, 2019.

_____/s/ Richard K. Eaton_____
Richard K. Eaton, Judge

Dated:        December 17, 2019
             New York, New York