Slip Op. 21– 24

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————  :
UNITED STATES,                          :
                                        :
        Plaintiff,                      :
                                        :
        v.                              :
                                        :
AEGIS SECURITY INSURANCE COMPANY,       :       Before: Richard K. Eaton, Judge
                                        :
        Defendant.                      :       Consol. Court No. 11-00388
———————————————————————  :
                                        :
AEGIS SECURITY INSURANCE COMPANY,       :
                                        :
        Third-Party Claimant,           :
                                        :
        v.                              :
                                        :
TRICOTS LIESSE 1983, INC.,              :
                                        :
        Third-Party Defendant.          :
———————————————————————  :

## MEMORANDUM OPINION and ORDER

[Third-Party Claimant Aegis Security Insurance Company's unopposed motion for summary judgment granted.]

Dated: February 26, 2021

*Stephen C. Tosini*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Plaintiff.

*T. Randolph Ferguson*, Sandler, Travis & Rosenburg, PA, of San Francisco, CA, for Defendant, and Third-Party Claimant.

*John B. Brew* and *Frances P. Hadfield*, Crowell & Moring LLP, of Washington, DC, for Third-Party Defendant.

Eaton, Judge: Before the court is an unopposed motion for summary judgment by Aegis

Security Insurance Company ("Aegis"), in its capacity as Third-Party Claimant, against Third-

Party Defendant Tricots Liesse 1983, Inc. ("Tricots"). *See* Aegis' Original Mem. Supp. Mot. Summ. J., ECF No. 126 ("Aegis Original Br."). Aegis, a surety company, commenced this third-party action against Tricots, an importer, following the complaint in the main action, brought by Plaintiff the United States ("Plaintiff") to collect unpaid duties owed by Tricots that were secured by a customs bond written by Aegis. *See* Aegis' Answer and Third-Party Claim (Jan. 9, 2012), ECF No. 13; Pl.'s Compl., Ex. A (bond), ECF No. 2-1.

The court has jurisdiction over Aegis' third-party action under 28 U.S.C. § 1583(2). *See* 28 U.S.C. § 1583(2) (2012) ("In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any . . . third-party action of any party, if . . . such claim or action is to recover upon a bond or customs duties relating to such merchandise.").

For the reasons that follow, the court grants summary judgment in favor of Aegis, and directs Aegis to submit proof of the amount of its reasonable attorney's fees, costs, and expenses, and a proposed judgment, in accordance with this Memorandum Opinion and Order.

## BACKGROUND

In the main action, the United States sued on a customs bond written by Aegis to secure duties owed by Tricots on its imports of knitted circular fabric from Canada. *See United States v. Aegis Sec. Ins. Co.*, 43 CIT __, 422 F. Supp. 3d 1328 (2019). The court granted summary judgment in favor of Plaintiff, finding that the United States "ha[d] been deprived of lawful duties and fees as a result of Tricots' violation of [19 U.S.C.] § 1592(a), and that the unpaid duties and merchandise processing fees [were] due and owing to the Government from Tricots and from Aegis, as surety." *See id.*, 43 CIT at __, 422 F. Supp. 3d at 1352. In so ruling, the court noted that

"Aegis' liability for duties [was] solely contractual and [was] limited by the face amount of the bond." *Id.*, 43 CIT at __, 422 F. Supp. 3d at 1352 n.18 (citing 19 C.F.R. § 113.62(a)).

Judgment in the main action was entered on January 9, 2020. *See* Judgment (Jan. 9, 2020), ECF No. 125. As against Aegis, the court entered judgment in the amount of $500,113.32 in lost revenue up to the bond limit, plus $260,031.35 in statutory interest and $81.98 per day in post-judgment interest. As against Tricots, the court entered judgment in the amount of $2,249,196.04 for unpaid duties and merchandise processing fees, plus post-judgment interest.

On May 1, 2020, Aegis tendered $768,916.53 to Plaintiff in satisfaction of the judgment against it. *See* Aegis Original Br., Ex. 1.

On May 14, 2020, Aegis filed its motion for summary judgment, seeking reimbursement of the amount it tendered to Plaintiff, plus reasonable attorney's fees, costs, and expenses incurred in defending the main action and pursuing its third-party action.

On June 17, 2020, Tricots filed a consent motion for an extension of time to respond to Aegis' motion, citing, as good cause, the close of its factory and facilities due to the COVID-19 pandemic. *See* Tricots' Mot. Extension of Time (June 17, 2020), ECF No. 127. The court granted the extension, giving Tricots an additional two months, *i.e.*, until August 17, 2020, to respond. *See* Order (June 23, 2020), ECF No. 128. No response was filed by the extended deadline. Counsel for Tricots withdrew their appearances approximately five weeks after the extended deadline, on September 23, 2020. *See* Order (Sept. 23, 2020), ECF No. 132. Tricots did not obtain substitute counsel.

On November 18, 2020, the court ordered supplemental briefing on the contractual basis for Aegis' claims for reimbursement and attorney's fees, costs, and expenses. *See* Order (Nov. 18, 2020), ECF No. 133. In response, Aegis filed its first supplemental brief, to which it attached the

declaration of Amy Morlier, an employee of Aegis' agent, Avalon Risk Management, Inc.,
regarding an "Application and Indemnity Agreement" that was entered into by Avalon and Tricots
on October 17, 2000. *See* Aegis' First Suppl. Br., ECF No. 136.

On December 10, 2020, the court scheduled oral argument on Aegis' motion for summary
judgment. *See* Order (Dec. 10, 2020), ECF No. 135. Tricots received notice of the scheduled
proceeding and declined to participate.

Oral argument was held on December 17, 2020, following which the court ordered Aegis
to provide further supplemental briefing in support of its motion, relating to the extent, if any, the
language in the bond, that was the subject of the main action, supported Aegis' third-party claim
for reimbursement. *See* Order (Dec. 17, 2020), ECF No. 138. In response, Aegis filed its second
supplemental brief, to which it attached a second declaration by Ms. Morlier. *See* Aegis' Second
Suppl. Br., ECF No. 141.

By way of proof in support of its claim for attorney's fees, costs, and expenses, Aegis has
attached to its motion what appears to be attorney time sheets, but has not submitted a declaration
or other proof to support the reasonableness of the amounts it claims to have incurred. *See* Aegis'
Original Br., Ex. 2.A & 2.B.

## STANDARD OF REVIEW

Summary judgment may be granted where there is no genuine issue of material fact, and
the movant is otherwise entitled to judgment as a matter of law. *See* U.S. Ct. Int'l Tr. R. 56(a);
*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## LEGAL FRAMEWORK

A customs bond is a tripartite agreement, entered into by a principal and a surety, for the benefit of the United States.[1] *See* 19 C.F.R. § 113.62(a)(1)(ii) (requiring "principal and surety, jointly and severally" to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due . . . on any entry secured by [a] bond"); *see also Hartford Fire Ins. Co. v. United States*, 40 CIT __, __, 254 F. Supp. 3d 1333, 1355 (2017) (finding that the customs bonds at issue were "valid and enforceable contracts between Customs, the importer principals, and [the surety,] Hartford"). U.S. Customs and Border Protection ("Customs") regulations set out requirements for bond contracts, including that the signature and seal of corporate sureties and principals appear on the bond, among other requirements and conditions. *See generally* 19 C.F.R. Pt. 113; *see also id.* § 113.37(e) ("A bond executed by a corporate surety must be signed by an authorized officer or attorney of the corporation and the corporate seal must be affixed immediately adjoining the signature of the person executing the bond . . . ."); *id.* § 113.33(b) ("The bond of a corporate principal must be signed by an authorized officer or attorney of the corporation and the corporate seal must be affixed immediately adjoining the signature of the person executing the bond . . . ."). This Court has held that Customs' regulatory bond requirements are "procedural" in that they "are meant to protect Customs in furtherance of its mission to protect revenue of the United States, and do not clearly alter the rights of the private parties engaging in the bonding procedure." *Hartford Fire Ins. Co.*, 40 CIT at __, 254 F. Supp. 3d at 1351.

---

[1]     The language of the bond itself expresses the parties' respective promises and the purpose of the contract: "In order to secure payment of any duty, tax or charge and compliance with law or regulations as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below." Pl.'s Compl., Ex. A.

Principles of contract law determine the validity of the bond contract and the respective duties of the parties. *See Hartford Fire Ins. Co.*, 40 CIT at __, 254 F. Supp. 3d at 1355 (citations omitted) (applying "ordinary principles of contract construction as would be applicable to any contract action between private parties" in evaluating the bonds at issue). Thus, the failure to satisfy a procedural requirement under Customs' regulations does not invalidate the bond, where the evidence otherwise shows the parties' intention to be bound by the contract. *See id.*, 40 CIT at __, 254 F. Supp. 3d at 1355 (citing *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C. Cir. 1985)). Accordingly, the absence of an importer's signature on a bond does not render a bond void for want of an "essential term," where other circumstances, including, as in *Hartford*, entry paperwork, indicated the importer's intention to be bound. *See id.*, 40 CIT at __, 254 F. Supp. 3d at 1357-58.

## DISCUSSION

By its motion, Aegis maintains that there is no genuine issue of material fact that would preclude granting summary judgment in its favor on its claim that Tricots agreed (1) to reimburse it for amounts paid to the United States on Tricots' behalf for lost duties and interest, and (2) to indemnify it for attorney's fees, costs, and expenses incurred in defending the main action and in bringing the third-party action.

## I.      Undisputed Facts

In the year 2000, Tricots applied for a continuous transaction bond in the amount of $230,000 from Aegis through Aegis' agent, Avalon Risk Management, Inc. *See* Aegis' First Suppl. Br., Ex. 3 (Morlier Decl.) ¶ 6. To obtain the bond, on October 17, 2000, Tricots executed a

"Customs Bond Application and Indemnity" form and submitted it to Avalon. *See* Aegis' First

Suppl. Br., Ex. 3.1. Under the Indemnity Agreement on the back of the form, the execution of

which was a condition to Aegis' issuance of the bond on Tricots' behalf, Tricots agreed:

> To indemnify the Company [*i.e.*, Aegis] and hold it harmless from and against any
> and all attorneys' fees, costs, damages, demands, liabilities, losses and expenses,
> regardless of the nature, which arise by reason of, or as a consequence of, the
> Company executing a bond on the Principal's behalf, and whether or not the
> Company has paid any sums, including, but not limited to: expenses paid or
> incurred in connection with claims, judgments or suits under its bonds; sums paid
> (including interest), or liabilities incurred, in settlement of claims; expenses paid or
> incurred in enforcing the terms of this Indemnity Agreement; expenses paid or
> incurred by the Company in procuring, or attempting to procure, release from
> liability under its bond; expenses incurred in recovering, or attempting to recover,
> losses or expenses paid or incurred; attorneys' fees, costs or expenses; accounting,
> engineering or investigation services; adjustments of claims; premiums on bonds
> issued by the Company.

Aegis' First Suppl. Br., Ex. 3.2 § 1.

In its answer to Aegis' third-party claim, Tricots admitted that "[a]t [its] special instance

and request," Aegis, as surety, "executed and delivered to United States Customs and Border

Protection [("Customs")], that certain Customs bond, a $230,000 Continuous Bond, dated October

24, 2002, attached to Plaintiff's Complaint as Exhibit A." Aegis' Third-Party Claim ¶ 5; Tricots'

Third-Party Def.'s Answer ¶ 5, ECF No. 37. Under the terms of the bond:

> Principal(s) [*i.e.*, Tricots] . . . agree to reimburse surety and/or its agents any amount
> paid to U.S. Customs on behalf of the principal(s) and to pay all collection fees and
> legal costs in the recovery of payments made by the surety and/or its agents to U.S.
> Customs.

Pl.'s Compl., Ex. A; *see also* 19 C.F.R. § 113.62(a) ("Agreement to Pay Duties, Taxes, and

Charges").[2] Tricots did not sign the bond, but it paid the annual premiums throughout the life of

the bond. *See* Aegis Second Suppl. Br., Ex. 4 ¶ 6 (Second Morlier Decl.) & Ex. 4.1.

---

[2]         Customs' regulations state, in pertinent part:

On January 9, 2020, Plaintiff obtained a judgment against Aegis, which Aegis has satisfied by tendering $768,916.53 to the United States. *See* Aegis' Original Br., Ex. 1.

## II.     Reimbursement Claim

Upon review of the declarations of Ms. Morlier and the indemnity agreement and other exhibits attached thereto, the language of the bond, and the parties' undisputed conduct and admissions in their pleadings, the court grants summary judgment in favor of Aegis on its third-party claim for reimbursement of amounts it paid under the bond to the United States.

There is no dispute that Tricots requested, and Aegis executed, the bond that formed the basis of Plaintiff's claims in the main action. Nor is it disputed that Tricots paid the annual premiums throughout the life of the bond. Thus, notwithstanding the absence of Tricots' signature, there can be little doubt that the bond is valid. *See Hartford Fire Ins. Co.*, 40 CIT at __, 254 F. Supp. 3d at 1357-58.

Turning to the language of the bond itself, it states that Tricots as principal "*agree[s] to reimburse* surety and/or its agents any amount paid to U.S. Customs on behalf of the principal(s) and to pay all collection fees and legal costs in the recovery of payments made by the surety and/or

---

If merchandise is imported and released from [Customs] custody or withdrawn from a [Customs] bonded warehouse into the commerce of, or for consumption in, the United States, . . . the obligors (principal and surety, jointly and severally) agree to:

(i) Deposit, within the time prescribed by law or regulation, any duties, taxes, and charges imposed, or estimated to be due, at the time of release or withdrawal; and

(ii) Pay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

19 C.F.R. § 113.62(a)(1).

its agents to U.S. Customs." Pl.'s Compl., Ex. A (emphasis added). There is no dispute that Aegis

satisfied its obligation under the bond when it tendered $768,916.53 to Plaintiff. *See* Aegis'

Original Br., Ex. 1. Thus, applying the law of contracts, Tricots must "reimburse [Aegis] and/or

its agents any amount paid to U.S. Customs on behalf of [Tricots]." Pl.'s Compl., Ex. A.

Therefore, because there is no genuine issue of material fact that would preclude summary

judgment on Aegis' third-party claim for reimbursement of $768,916.53, and the law directs that

the court must "give effect to the mutual intentions of the parties," the court grants Aegis' motion

for summary judgment on the reimbursement claim. *See Hartford Fire Ins. Co.*, 40 CIT at __, 254

F. Supp. 3d at 1355 (citation omitted).


### III.     Claim for Attorney's Fees, Costs, and Expenses

The language of both the bond and the indemnity agreement supports granting Aegis

recovery not only of amounts incurred to defend the main action, but also to pursue this third-party

action. The bond states that the principal "*agree[s] . . . to pay all collection fees and legal costs* in

the recovery of payments made by the surety and/or its agents to U.S. Customs." Pl.'s Compl., Ex.

A (emphasis added). Moreover, it is clear from the indemnity agreement that Tricots agreed to

indemnify Aegis for "any and all attorneys' fees, costs, damages, demands, liabilities, losses and

expenses, regardless of the nature, which arise by reason of, or as a consequence of, the Company

executing a bond on the Principal's behalf." Aegis' First Suppl. Br., Ex. 3.2 § 1. "[T]he court's

duty in construing the contracts at issue is to give effect to the mutual intentions of the parties."

*Hartford Fire Ins. Co.*, 40 CIT at __, 254 F. Supp. 3d at 1355. Thus, both the bond and the

indemnity agreement by their plain terms bind Tricots to pay any reasonable attorney's fees, costs,

and expenses.

Aegis leaves it up to the court to determine an amount for "reasonable attorney's fees, cost[s,] and expenses as this Court . . . deems just and appropriate." Aegis' Second Suppl. Br. 8. It submits that "$92,042.50 in attorney fees and $679.45 in costs and expenses . . . is a reasonable sum spent in its defense of (1) the claims against [Tricots] prior to the trial, and (2) reimbursement for trial preparation, and the reasonable fees and expenses incurred in pursuing its Third-Party Claim." Aegis' First Suppl. Br. 9. Aegis fails, however, to support its proposed recovery amounts ("$92,042.50 in attorney fees and $679.45 in costs and expenses") with evidentiary support showing that these amounts are reasonable. Rather, as proof, Aegis has submitted what appear to be attorney time sheets, which are on Aegis' letterhead, without an accompanying declaration from a person with knowledge of these records to authenticate them and affirm the amounts that Aegis paid, or that are due and owing. *See* Aegis' Original Br., Ex. 2.A & 2.B. Absent a declaration or other evidence as to the reasonableness of the amounts submitted by Aegis, the court cannot determine the fair and reasonable value of Aegis' counsel's services. In order to permit the court to make this determination, Aegis is directed to submit proof in a form that is modeled after this Court's Form 15, "Application For Fees And Other Expenses Pursuant To The Equal Access To Justice Act," which is available on the Court's website, in accordance with the court's order.

## CONCLUSION and ORDER

For the foregoing reasons, Aegis' motion for summary judgment is granted on its third-party claim for reimbursement of $768,916.53, as well as for attorney's fees, costs, and expenses incurred in defending the main action and pursuing the third-party action. Accordingly, it is hereby

**ORDERED** that Aegis' motion for summary judgment is granted; it is further

Consol. Court No. 11-00388                                              Page 11

      **ORDERED** that Aegis shall submit proof to support its claim for attorney's fees, costs, and expenses that is modeled, in form and content, after this Court's Form 15, "Application For Fees And Other Expenses Pursuant To The Equal Access To Justice Act," which is available on the Court's website; it is further

      **ORDERED** that Aegis shall submit a proposed Judgment that sets out the amounts owed to it by Tricots, and an amount for reasonable attorney's fees, costs, and expenses, in accordance with this Memorandum Opinion and Order; and it is further

      **ORDERED** that Aegis' proof to support its claim for attorney's fees, costs, and expenses and its proposed Judgment shall be submitted to the court no later than the date that is four weeks from the date of this Memorandum Opinion and Order.

 

                                                   /s/ Richard K. Eaton
                                                 Richard K. Eaton, Judge

Dated:         February 26, 2021
               New York, New York